**BURLINGTON NORTHERN RAILROAD COMPANY, Appellant,**

v.

**Ubong "Rockey" AKPAN, Appellee.**

No. 2–96–236–CV.

Court of Appeals of Texas,
Fort Worth.

Dec. 5, 1996.

Rehearing Overruled Jan. 16, 1997.

Publication Ordered April 17, 1997.

tion and to stay the suit pending completion of binding arbitration. The trial court determined no binding agreement to arbitrate existed and denied Burlington's motion. Burlington now raises this interlocutory appeal of the trial court's denial of its motion under the Texas General Arbitration Act. *See* TEX. CIV. PRAC. & REM. Code Ann. § 171.017(a)(1) (Vernon Pamph.1997). Because we find no evidence to support the trial court's finding that there was no agreement to arbitrate this dispute, we reverse and remand this case to the trial court with instructions to grant Burlington's motion.

Burlington argues in its first point of error that the trial court's ruling was erroneous because Burlington established the existence of an agreement to arbitrate this dispute as a matter of law. We agree. Accordingly, we do not need to address its remaining points of error.[1]

Kent R. Smith, Lawrence M. Stroik, Charles W. Shewmake and Odesa L. Gorman-Stapleton, Jackson & Walker, L.L.P., Fort Worth, for Appellant.

Tim G. Sralla, David Fielding, and Jeff L. Jones, Fielding, Barrett & Taylor, L.L.P., Fort Worth, for Appellee.

Before CAYCE, C.J., and DAY and BRIGHAM, JJ.

## OPINION

DAY, Justice.

Appellee Ubong "Rockey" Akpan sued Burlington Northern Railroad Company ("Burlington") for discrimination on the basis of race and national origin under the Texas Commission on Human Rights Act regarding termination of his employment. *See* TEX. LAB.CODE ANN. § 21.051 (Vernon 1996). Burlington filed a motion to compel arbitra-

## SUMMARY OF THE FACTS

Burlington employed Akpan in January 1985. In 1991, Burlington adopted a policy that required binding arbitration of all disputes relating to the termination of employees or the status of exempt employees. Burlington sent copies of this policy to all active, exempt employees in January 1991 and again in February 1993. Akpan, an exempt employee, admits receiving a copy of this policy in March 1993. Akpan continued to work for Burlington until his termination December 15, 1993.

## APPLICABLE LAW

■ The Texas General Arbitration Act provides:

A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such

---

1. Burlington raises four points of error. First, Burlington argues that the trial court's ruling was error because Burlington established the existence of an agreement to arbitrate this dispute as a matter of law. Alternatively, Burlington contends the trial court erroneously placed the burden of proof for this motion to compel arbi-

tration on Burlington. Burlington then asserts, as another alternative, that the trial court's ruling was against the great weight and preponderance of the evidence, or an abuse of its discretion. Finally, Burlington argues that the trial court erred by failing to conduct an evidentiary hearing.

grounds as exist at law or in equity for the revocation of any contract.

TEX. CIV. PRAC. & REM.CODE ANN. § 171.001 (Vernon Pamph.1997). This act further provides for proceedings to compel or stay arbitrations:

On application of a party showing an agreement described in Section 171.001, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration; but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied.

TEX. CIV. PRAC. & REM.CODE ANN. § 171.002 (Vernon Pamph.1997). A court deciding a motion to compel arbitration must first determine whether the parties agreed to arbitrate, and if so, it must then determine whether the agreement encompasses the claims asserted. *Southwest Health Plan, Inc. v. Sparkman,* 921 S.W.2d 355, 358 (Tex. App.—Fort Worth 1996, no writ). In the present case, if there is a valid agreement to arbitrate, the agreement encompasses Akpan's wrongful termination claim. Accordingly, we need only determine whether a valid agreement to arbitrate exists.

■ Either party to an employment-at-will relationship may impose modifications to employment terms. *Hathaway v. General Mills, Inc.,* 711 S.W.2d 227, 229 (Tex.1986). The party asserting the modification must prove that it unequivocally notified the other party of definite changes in the employment terms and the other party's acceptance of those changes. *Id.* When an employer notifies an employee of such changes, the employee must accept the new terms or quit. *Id.* If the employee continues to work with knowledge of the changes, he has accepted the changes. *Id.* To have knowledge of the changes, the employee must know the nature of the modifications and the certainty of their imposition. *Id.*

## BURDEN OF PROOF

■ We note that Texas courts strongly favor arbitration and courts usually indulge every reasonable presumption in favor of arbitration. *See, e.g., Prudential Sec., Inc. v. Marshall,* 909 S.W.2d 896, 898 (Tex.1995) (orig.proceeding); *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 268 (Tex.1992) (orig.proceeding); *Brazoria County v. Knutson,* 142 Tex. 172, 176 S.W.2d 740, 743 (1943); *Sparkman,* 921 S.W.2d at 357, *Fridl v. Cook,* 908 S.W.2d 507, 511 (Tex.App.—El Paso 1995, writ dism'd w.o.j.); *Howell Crude Oil v. Tana Oil & Gas,* 860 S.W.2d 634, 636 (Tex. App.—Corpus Christi 1993, no writ); *Hearthshire Braeswood Plaza Ltd. v. Bill Kelly Co.,* 849 S.W.2d 380, 386 (Tex.App.—Houston [14th Dist.] 1993, writ denied). However in the present case, Burlington, as the party asserting the employment-at-will relationship was modified, has the burden to establish the modification. *Hathaway,* 711 S.W.2d at 229.

■ When the party with the burden of proof on a fact question challenges an adverse answer as a matter of law, this is a challenge to the legal sufficiency of the evidence. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). If an appellant is attacking the legal sufficiency of an adverse answer to a finding on which it had the burden of proof, the Texas Supreme Court has stated that the appellant must, as a matter of law, overcome two hurdles. *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 940 (Tex.1991). First, the record must be examined for evidence that supports the finding, while ignoring all evidence to the contrary. Second, if there is no evidence to support the factfinder's answer, then the entire record must be examined to see if the contrary proposition is established as a matter of law. *Id.*; *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989).

## THE EVIDENCE

Burlington presented evidence by affidavit that it adopted the following arbitration policy in January 1991:

All claims, disputes, or issues related to or arising out of the termination of employment or exempt status of an employee of the company shall be submitted for resolution exclusively by arbitration and only

after all internal resolution efforts have been exhausted.

Further, it presented evidence that this policy was sent to all active, exempt employees by letter from its vice president of human resources, and in the form of updated pages to its employee handbook, in January 1991. It was sent again in February 1993 with another employee handbook update.

Akpan contends by affidavit that he received no communication from Burlington concerning its arbitration policy. However, he then states that he received a copy of the employee handbook page setting forth this arbitration policy in March 1993, but received no "instruction or notice" concerning the policy. The copy of the page that he "discovered in [his] records" is attached to Akpan's affidavit. Burlington's policy is preceded by the words "[t]he following policy applies to all new hires and employees effective January 1, 1991." It is followed by the following statement: "No legal action may be filed in any court. All disputes concerning termination of employment or exempt status will be resolved by arbitration." The parties do not dispute that Akpan continued working for Burlington until his termination on December 15, 1993.

### ANALYSIS

■ Akpan contends there was not an effective modification to their employment-at-will agreement for two reasons. First, he argues that notwithstanding his admission that he received the policy in March 1993, he had no knowledge of Burlington's arbitration policy when he continued working until December 1993. *See Hathaway,* 711 S.W.2d at 229. Next, he asserts that if there was a modification, it was not written as required by section 17.001 of the Texas General Arbitration Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.001 (Vernon Pamph.1997).

Akpan asserts that he offered evidence that he did not receive unequivocal notice of the changes such that he knew the nature of the changes and the certainty of their imposition. However, Akpan admitted he received the amended handbook pages in March 1993 and attached copies to his affidavit. The language of the page is unequivocal and provides clear direction to Burlington's employees: "The following policy applies to all new hires and employees effective January 1, 1991.... No legal action may be filed in any court. All disputes concerning termination of employment ... will be resolved by arbitration." In the same affidavit Akpan testifies, this policy was not "communicated" to him and he received "no instruction or notice." Akpan argues that despite his receipt of the document, he had no actual knowledge of it.

■ Beyond his admission that he received the document, the evidence offered in Akpan's affidavit is equivocal. It states, in effect, he received the document but he was not notified. He attached as an exhibit a document explicitly and plainly explaining Burlington's arbitration policy and testified he received no instruction or notice.

> In law whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand, which if pursued by the proper inquiry the full truth might have been ascertained.... [A]ctual knowledge embraces those things of which the one sought to be charged has express information, and likewise those things which a reasonably diligent inquiry and exercise of the means of information at hand would have disclosed.

*Hexter v. Pratt,* 10 S.W.2d 692, 693 (Tex. Comm'n App.1928, judgm't adopted), *quoted with approval in Champlin Oil & Ref. Co. v. Chastain,* 403 S.W.2d 376, 388–89 (Tex.1965); *see also Hicks v. Loveless,* 714 S.W.2d 30, 33 (Tex.App.—Dallas 1986, writ ref'd n.r.e); *T–Vestco Litt–Vada v. Lu–Cal One Oil Co.,* 651 S.W.2d 284, 293 (Tex.App.—Austin 1983, writ ref'd n.r.e). Accordingly, we cannot find that a party's subsequent denial of knowledge of a material fact is any evidence of lack of knowledge where the party admits receipt of actual notice of the fact, then fails to read it or remember it, either by his own negligence or by his conscious choice. The party providing unequivocal notice of changes in employment terms cannot force the other party to assimilate and understand the information in the notification.

**52**

Akpan further contends there is evidence that this agreement is not in compliance with the requirement in the Texas General Arbitration Act that arbitration agreements be written. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.001 (Vernon Pamph. 1997). However, Akpan has attached a copy of a writing, which he admits receiving, to his affidavit. This writing sets forth in unequivocal language the terms of Burlington's arbitration policy. Akpan contends this is not an agreement because it is unsigned. The Texas General Arbitration Act requires only that the terms of the agreement be written; it does not require that it be signed by either party. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.001 (Vernon Pamph. 1997).

Burlington set forth the terms of its policy in its written supplement to its employee handbook. Akpan accepted the agreement and provided consideration by continuing to work for Burlington. Although an employee handbook is not a contract that will alter the at-will nature of the employment relationship, a provision in an employee manual may create enforceable rights where the provision does not alter the at-will nature of the employment relationship. *Compare Federal Express Corp. v. Dutschmann,* 846 S.W.2d 282, 283–84 (Tex.1993) (holding an employee manual did not create contract restricting the employment-at-will relationship) *with E–Z Mart Stores, Inc. v. Hale,* 883 S.W.2d 695, 699 (Tex.App.—Texarkana 1994, writ denied) (holding a unilaterally issued employer policy created an enforceable right for at-will employees). Both employers as well as employees may enforce such policies. There is a valid agreement to arbitrate, and its terms are unequivocally set forth in the writing attached to Akpan's affidavit.

Accordingly, we hold there is no evidence that the writing attached to Akpan's affidavit is an insufficient writing to comply with the requirements of section 171.001 of the Texas General Arbitration Act. We sustain point of error one. We need not consider Burlington's remaining points of error.

CONCLUSION

Burlington provided Akpan with unequivocal notice of its policy requiring arbitration of employment termination disputes, and Akpan admits receiving such notice in March 1993. Further, there is no dispute that Akpan continued working for Burlington after March 1993. Consequently, it is established as a matter of law that there is an agreement to arbitrate this dispute, and it is undisputed that this claim falls within the scope of that agreement. Therefore, we reverse and remand this case to the trial court with instructions to grant Burlington's motion.